**EXHIBIT 2**

1             UNITED STATES DISTRICT COURT

2                  DISTRICT OF NEVADA

3                    * * * * *

4  LN MANAGEMENT LLC SERIES        CASE NO.:
   8246 AZURE SHORES,              2:13-cava-01307-ICM-(PAL)
5
        Plaintiff,
6
      vs.
7
   ARLENE G. DIZON; WELLS FARGO
8  BANK, N.A.; WORLD SAVINGS
   BANK, FSB; and DOES 1 through
9  10, inclusive,

10       Defendants.
   _____
11

12

13                 DEPOSITION OF

14               CHRISTIE MARLING,

15

16                 May 8, 2014

17                  9:16 a.m.

18

19              10161 Park Run Drive
                    Suite 150
20              Las Vegas, Nevada

21

22                      .

23       Christine M. Jacobs, CCR No. 455

24

25



CHRISTIE MARLING                                        May 08, 2014
LN MANAGEMENT vs. ARLENE G. DIZON                              2

```
1                    APPEARANCES OF COUNSEL

2    For Wells Fargo Bank, N.A.:

3        DAVID J. MERRILL, P.C.
         DAVID J. MERRILL, ESQ.
4         10161 Park Run Drive, Suite 150
          Las Vegas, Nevada  89145
5         702 566-1935
          702 993-8841 Fax
6         david@djmerrillpc.com

7    For RRFS:

8        KOCH & SCOW
         STEVEN B. SCOW, ESQ.
9        11500 S. Eastern Avenue, Ste. 210
          Las Vegas, Nevada  89052
10        702 318-5040
          702 318-5039 Fax
11        sscow@kochscow.com

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```



```
 1              Deposition of Christie Marling
 2                      May 8, 2014
 3              (Prior to the commencement of the
 4  deposition, all of the parties present agreed to waive
 5  statements by the court reporter, pursuant to Rule
 6  30(b)(5)(a) of the FRCP.
 7              CHRISTIE MARLING, having been first duly
 8  sworn, testified as follows:
 9                      EXAMINATION
10  BY MR. MERRILL:
11     Q.    Can you go ahead and state your full name for
12  the record.
13     A.    Christie Marling.
14     Q.    Can you spell your last name, please?
15     A.    M-a-r-l-i-n-g.
16     Q.    Miss Marling, my name is David Merrill.  We met
17  just a second ago.  I represent Wells Fargo Bank in
18  connection with a lawsuit that was originally brought by
19  LN Management against Wells Fargo dealing with some
20  property in which Red Rock Financial Services was
21  involved in the foreclosure.  Do you understand that?
22     A.    Yes.
23              MR. MERRILL:  For the record, Kerry Faughnan,
24  the attorney for plaintiff, is not here.  Our office did
25  call and left him a message.  We also sent him an email.
```



1    Q.    You're appearing here today based upon a notice

2    of deposition that was served on Red Rock Financial

3    Services; is that correct?

4    A.    Correct.

5    Q.    Did you have a chance to look at that notice?

6    A.    Briefly.

7          MR. MERRILL:   Let's go ahead and mark the

8    exhibit.

9          (Exhibit 1 was marked for identification.)

10   Q.    (By Mr. Merrill) Miss Marling, we've handed you

11   a document we've identified as Exhibit 1.  This is the

12   notice of deposition, and attached to it is a subpoena to

13   testify at a deposition, and I'd like you to look at the

14   very last page of this Exhibit 1.  Do you see that?

15   A.    Uh-huh.

16   Q.    Is that a yes?

17   A.    Yes.   Sorry.

18   Q.    There's a list of matters identified on there,

19   nine different matters, to which we were asking for Red

20   Rock to designate the person most knowledgeable to

21   testify about those nine matters.  Are you the person

22   most knowledgeable with respect to those nine matters?

23   A.    Yes.

24   Q.    Have you ever had your deposition taken before?

25   A.    Yes.



1   there's things like lien for delinquent assessments, lien

2   release, lien recording costs, mailing costs, things like

3   that.  Those would be Red Rock fees?

4       A.   Correct.

5       Q.   Okay.  When in the process does Red Rock start

6   to rely upon its own accounting ledger and not the

7   association's ledger?

8       A.   We always have to rely on the association's

9   ledger for accuracy.

10      Q.   So before a foreclosure is done or before a

11  notice is done, notice of default or a notice of

12  delinquent lien, you still get another copy of the

13  association's ledger?

14      A.   Yes.

15      Q.   And you compare it with your own ledger?

16      A.   Yes.

17      Q.   So the only way to determine, at least looking

18  at the lien for delinquent assessments, what the

19  breakdown is is by obtaining one of these accounting

20  ledgers either from Red Rock or from the HOA or its

21  property manager; correct?

22      A.   Correct.

23           (Exhibit 4 was marked for identification.)

24      Q.   (By Mr. Merrill) Miss Marling, I've handed you a

25  document identified as Exhibit 4, and this is a notice

1  of, appears to be a notice of default on election to sell

2  pursuant to the lien for delinquent assessments.  Do you

3  see that?

4      A.   Yes.

5      Q.   This looks like it was signed by, wow, is it

6  Eungel?

7      A.   Eungel.

8      Q.   Eungel Watson.  Do you know who that person is?

9      A.   Yes.

10      Q.   Does Eungel still work for Red Rock Financial

11  Services?

12      A.   Yes.

13      Q.   Is that a she?

14      A.   Yes.

15      Q.   And what does Miss Watson do for Red Rock

16  Financial Services?

17      A.   She prepares the notice of defaults.

18      Q.   Now, in this notice of default, if you look, I

19  guess, under the giant big caps lock one, there's two

20  paragraphs.  The one, the paragraph that starts with

21  "above stated," do you see that?

22      A.   Yes.

23      Q.   The very second to last sentence of that says:

24  As of December 27, 2011, the amount owed is $1,595.80; is

25  that correct?



1    A.   Yes.

2    Q.   Again, is there any way to determine based upon

3  this notice alone what that $1,595.80 is compromised of?

4    A.   No.

5    Q.   And it could be comprised of assessments?

6    A.   Yes.

7    Q.   Could it be comprised of late fees?

8    A.   Yes.

9    Q.   Interest?

10    A.   Yes.

11    Q.   Red Rock Financial Service fees for mailings?

12    A.   Yes.

13    Q.   Could it be compromised of violation charges?

14    A.   No.

15    Q.   Why couldn't it be compromised of violation

16  charges?

17    A.   We're unable to foreclose for violation fees, so

18  we don't include them in our notice of default.

19    Q.   What if it's a violation fee that arguably

20  violates the health, safety, and welfare of the

21  community, would you include those in here?

22    A.   Yes.

23    Q.   So it could be a violation as well?

24    A.   Yes.

25    Q.   Could it include, would it include any



```
1   attorney's fees?

2      A.   Yes.

3      Q.   Again, to determine what that would be, you have

4   to look at the accounting ledger that was done as of the

5   time that this notice of default was done in early

6   January of 2012; correct?

7      A.   Yes.

8           (Exhibit 5 was marked for identification.)

9      Q.   (By Mr. Merrill) Miss Marling, we handed you a

10  document we've identified as Exhibit 5.  It appears to be

11  a letter dated March 12, 2012, from Red Rock Financial

12  Services to World Savings Bank.  Do you see that?

13     A.   Yes.

14     Q.   Have you ever seen this letter before?

15     A.   Briefly.

16     Q.   When you say "briefly," in what context have you

17  seen it?

18     A.   Prior to preparing the notice of sale as I

19  review the account.

20     Q.   Okay.  Is this sort of a form letter or a

21  standard letter that is sent out in connection with Red

22  Rock Financial Services doing a foreclosure?

23     A.   Yes.

24     Q.   And it appears this letter was sent out March

25  12, 2012, so this would have been after the notice of
```



1  default and election to sell was sent; correct?

2     A.   Correct.

3     Q.   Why would this letter be sent out from Red Rock

4  Financial to World Savings in this situation?

5     A.   As a notice that the 90-day time frame is about

6  to expire on the notice of default.

7     Q.   Is this sent out to anyone else other than any

8  lenders?

9     A.   Anybody who has a vested interest in the

10  property, yes.

11     Q.   So the borrower, any other lien holders would

12  receive this letter?

13     A.   Correct.

14     Q.   If you look at the fourth paragraph down, the

15  first sentence says:  The association's lien for

16  delinquent assessments is junior only to the senior

17  lender/mortgage holder.  Do you see that?

18     A.   Yes.

19     Q.   Is this language that's in the standard letter

20  that's sent out?

21     A.   Yes.

22     Q.   So at least it was Red Rock's understanding that

23  the first security interest holder's lien was superior to

24  the association's lien?

25     A.   Correct.



1      Q.    And World Savings was notified of that fact in

2  connection with this foreclosure?

3      A.    Yes.

4            (Exhibit 6 marked for identification.)

5      Q.    (By Mr. Merrill) Okay.  Miss Marling, we've

6  handed you a document we've identified as Exhibit 6.  It

7  appears to be a notice of foreclosure sale and looks like

8  it was recorded April 8th, 2013; is that correct?

9      A.    Yes.

10      Q.    Is there any reason why or are you aware of a

11  reason why the foreclosure sale occurred about a year and

12  a half or a year and a couple months after the notice of

13  default was done?

14      A.    We didn't receive association permission to set

15  the sale until then.

16      Q.    Do you know why the association waited?

17      A.    No.

18      Q.    So this is the notice of sale of under the

19  delinquents assessments; correct?

20      A.    Yes.

21      Q.    This was prepared by Red Rock Financial

22  Services?

23      A.    Yes.

24      Q.    This was actually prepared by you, wasn't it?

25      A.    Yes.



1      Q.   And you signed it?

2      A.   Yes.

3      Q.   Very good.   That is your signature?

4      A.   Yes.

5      Q.   Very good.   When you were preparing this

6   document, what did you look at to prepare the document?

7      A.   To ensure the assessments are delinquent, the

8   accounting is updated and the ownership is verified.

9      Q.   And ownership is verified?

10     A.   Correct.

11     Q.   What do you mean?

12     A.   We check the assessor's page to make sure a deed

13   hasn't been recorded to change the ownership from when

14   the notice of default was done.

15     Q.   Anything else you do?

16     A.   Check for bankruptcies and obtain additional

17   addresses from skip tracing.

18     Q.   Why do you do that?

19     A.   In the event the homeowner hasn't notified our

20   office that they have filed bankruptcy or that they have

21   moved.

22     Q.   If you look on the second page of Exhibit 6, it

23   states on the second page, there's a bold amount.   It

24   appears to say it's $2,940.71 as of April 5th, 2013, is

25   the amount of the unpaid balance; is that correct?



CHRISTIE MARLING
LN MANAGEMENT vs. ARLENE G. DIZON

May 08, 2014
25

1    A.    Yes.

2    Q.    Again, that's the amount of the lien; correct?

3    A.    Yes.

4    Q.    And that lien could include all the things we

5    talked about before.  Interest, late fees, collection

6    costs, attorney's fees; correct?

7    A.    Yes.

8    Q.    From looking at this notice of sale, there's no

9    way to determine how that lien is broken down; correct?

10   A.    Correct.

11   Q.    You would again need a copy of the ledger?

12   A.    Correct.

13   Q.    Can a person reading this notice even determine

14   what the amount of the assessment is?

15   A.    No.

16   Q.    Did I say ledger or did I say notice?

17        MR. SCOW:  I think you said notice.

18        MR. MERRILL:  I meant notice.  If I said ledger,

19   I meant notice.

20        MR. SCOW:  I heard notice.

21        MR. MERRILL:  Okay.  Good.

22        MR. SCOW:  We knew what you meant.

23        MR. MERRILL:  Very good.

24        (Exhibit 7 was marked for identification.)

25   Q.    (By Mr. Merrill) Miss Marling, I've handed you a



1  document we've identified as Exhibit 7.  It's entitled

2  Certificate of Sale from Priority Posting and

3  Publishing.  Have you seen this document before?

4      A.   Yes.

5      Q.   Who is Priority Posting and Publishing?

6      A.   Our vendor who posts, publishes, and calls our

7  sales.

8      Q.   So the actual foreclosure sale where they go

9  down and call the sale, that's done by Priority Posting

10 and Publishing?

11     A.   Yes.

12     Q.   It's done at Nevada Legal News?

13     A.   Yes.

14     Q.   So somebody from Red Rock Financial Services

15 or -- strike that.  Let me ask that.  Is somebody from

16 Red Rock Financial Services actually at the sale?

17     A.   No.

18     Q.   And why is this certificate of sale done?

19     A.   As proof that the sale was conducted properly.

20     Q.   Okay.  And is this just a document that's

21 provided to Red Rock Financial Services?

22     A.   Yes.

23     Q.   Do you know Deborah Fontenot?

24     A.   Not personally.

25     Q.   So according to the certificate of sale that was



1   done, a trustee sale occurred on May 2, 2013, at

2   10:00 a.m.; correct?

3        A.   Yes.

4        Q.   And Priority Posting and Publishing was acting

5   as the agent for Red Rock Financial Services; correct?

6        A.   Yes.

7        Q.   And the property was then sold to Iyad Haddad;

8   correct?

9        A.   Yes.

10       Q.   It's I-y-a-d, and it's H-a-d-d-a-d.  And he

11   wanted that vested in LN Management, LLC, Series 8246

12   Azure Shores; correct?

13       A.   Yes.

14       Q.   And Mr. Haddad paid $15,000 for it; correct?

15       A.   Yes.

16       Q.   Do you know Mr. Haddad?

17       A.   Not personally.

18       Q.   You've never met him?

19       A.   No.

20       Q.   Have you ever talked to him on the phone?

21       A.   Yes.

22       Q.   Okay.  Have you talked to him on the phone in

23   connection with this property?

24       A.   Not that I recall.

25       Q.   How often have you talked to him on the phone?



1      A.    I think once.

2      Q.    Do you recall what that was for?

3      A.    No.

4      Q.    Other than Mr. Haddad occasionally buys

5   properties at foreclosure sales, does Mr. Haddad have any

6   relationship with Red Rock Financial Services to your

7   knowledge?

8      A.    No.

9      Q.    Do you know if Mr. Haddad has any relationship

10   to Monaco Landscape the HOA?

11     A.    No.

12     Q.    Do you know if he has any relationship with

13   respect to Priority Posting and Publishing?

14     A.    No.

15     Q.    So again, according to Exhibit 7, the

16   certificate of sale, Mr. Haddad paid $15,000 for the

17   property at the foreclosure sale; correct?

18     A.    Correct.

19           (Exhibit 8 was marked for identification.)

20     Q.    (By Mr. Merrill) Following the sale, a

21   foreclosure deed is done; is that correct?

22     A.    Yes.

23     Q.    And if you look at -- we just handed you a

24   document identified as Exhibit 8.  This appears to be a

25   foreclosure deed recorded on May 13, 2013; is that



CHRISTIE MARLING
LN MANAGEMENT vs. ARLENE G. DIZON

May 08, 2014
29

1  correct?

2      A.   Yes.

3      Q.   Is this the foreclosure deed that was done in

4  connection with the foreclosure sale that was held on May

5  2nd, in connection with the property?

6      A.   Yes.

7      Q.   Signed by Kimberly Sibley?

8      A.   Yes.

9      Q.   And do you know Miss Sibley?

10     A.   Yes.

11     Q.   Does she still work for Red Rock?

12     A.   No.

13     Q.   Do you know where she works now?

14     A.   She does not work as far as I know.

15     Q.   Again, this just basically says that the

16  foreclosure sale was conducted and as a result of that

17  foreclosure sale was paid $15,000 for the property;

18  correct?

19     A.   Correct.

20     Q.   Now, when that money is paid at an HOA

21  foreclosure sale, who gets that money?  Initially who

22  gets the money?

23     A.   Priority Posting collects it.

24     Q.   So what does Priority Posting then do with the

25  money?



1                        REPORTER'S CERTIFICATE

2    STATE OF NEVADA )
                      ) ss.
3    COUNTY OF CLARK )

4        I, CHRISTINE M. JACOBS, a certified shorthand

5    reporter for the state of Nevada, do hereby certify:

6        That I reported the deposition of the witness,

7    CHRISTIE MARLING, commencing on May 8, 2014, commencing

8    at the hour of 9:16 a.m.

9        That prior to being examined, the witness was by me

10   duly sworn to testify to the truth, the whole truth, and

11   nothing but the truth;

12       That I thereafter transcribed my said shorthand

13   notes into typewriting and that the typewritten

14   transcription of said deposition is a complete, true and

15   accurate transcription of my said shorthand notes taken

16   down at said time.

17       I further certify that I am not a relative or

18   employee of an attorney or counsel involved in said

19   action.

20       IN WITNESS WHEREOF, I have hereunto set my hand

21   in my office in the County of Clark, State of Nevada,

22   this 15th day of May 2014.        

23                        _____
                          CHRISTINE M. JACOBS, CCR 455

24

25

Assessor Parcel Number: 163-09-311-013
File Number:      R94460
Property Address: 8246 Azure Shores Ct
                  Las Vegas, NV 89117
Title Order Number: 35613

Inst #: 201201030000533
Fees: $17.00
N/C Fee: $0.00
01/03/2012 09:22:44 AM
Receipt #: 1024328
Requestor:
NORTH AMERICAN TITLE
COMPAN
Recorded By: DXI  Pgs: 1
DEBBIE CONWAY
CLARK COUNTY RECORDER

## NOTICE OF DEFAULT AND ELECTION TO SELL PURSUANT TO THE LIEN FOR DELINQUENT ASSESSMENTS
### ◆ IMPORTANT NOTICE ◆

*Red Rock Financial Services is a debt collector and is attempting to collect a debt. Any information obtained will be used for that purpose.*

## WARNING! IF YOU FAIL TO PAY THE AMOUNT SPECIFIED IN THIS NOTICE, YOU COULD LOSE YOUR HOME, EVEN IF THE AMOUNT IS IN DISPUTE!

**NOTICE IS HEREBY GIVEN:** Red Rock Financial Services officially assigned as agent by the Monaco Landscape Maintenance Association, Inc, under the Lien for Delinquent Assessments, recorded on 11/01/2011, in Book Number 20111101, as Instrument Number 0000848, reflecting ARLENE G. DIZON as the owner(s) of record on said lien, land legally described as MONACO #14 PLAT BOOK 90 PAGE 11 LOT 1177 BLOCK N, of the Official Records in the Office of the Recorder of Clark County, Nevada, makes known the obligation under the Covenants, Conditions and Restrictions recorded 11/13/1998, in Book Number 981113, as Instrument Number 02435, has been breached. As of 01/01/2011 forward, all assessments, whether monthly or otherwise, late fees, interest, Association charges, legal fees and collection fees and costs, less any credits, have gone unpaid.

Above stated, the Association has equipped Red Rock Financial Services with verification of the obligation according to the Covenants, Conditions and Restriction in addition to documents proving the debt, therefore declaring any and all amounts secured as well as due and payable, electing the property to be sold to satisfy the obligation. In accordance with Nevada Revised Statutes 116, no sale date may be set until the ninety-first (91) day after the recorded date or the mailing date of the Notice of Default and Election to Sell. As of December 27, 2011, the amount owed is $ 1,595.80. This amount will continue to increase until paid in full.

*Eungel Watson*                                      Dated: December 27, 2011
Prepared By Eungel Watson, Red Rock Financial Services, on behalf of Monaco Landscape Maintenance Association, Inc

STATE OF NEVADA        )
COUNTY OF CLARK        )
On December 27, 2011, before me, personally appeared Eungel Watson, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that they executed the same in their authorized capacity, and that by their signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

*Theresa Solis*

When Recorded   Red Rock Financial Services
Mail To:        7251 Amigo Street, Suite 100
                Las Vegas, Nevada 89119
                702-932-6887

THERESA SOLIS
Notary Public, State of Nevada
Appointment No. 01-70500-1
My Appt. Expires June 3, 2013



Exhibit
Exhibit No.: 4
Name: Marling
Date: 5|8|14
◎ESQUIRE

ID-RRFS000012

 **Red Rock Financial Services**

March 12, 2012

WORLD SAVINGS BANK, FSB
Attn: Mortgage Division
1901 HARRISON STREET
LN #0024400368
OAKLAND, CA 94612
R94460

Re:     8246 Azure Shores Ct, Las Vegas, NV 89117
        Monaco Landscape Maintenance Association, Inc / R94460

To Whom It May Concern:

***Red Rock Financial Services is a debt collector and is attempting to collect a debt.  Any information obtained will be used for that purpose.***
Red Rock Financial Services is sending this notice as a courtesy.  The above referenced homeowner is currently delinquent in paying their Homeowners Association assessments.  Nevada Revised Statutes allow Homeowners Associations to engage in the non-judicial foreclosure process for nonpayment of Homeowner Association assessments.

On behalf of the above mentioned Association, Red Rock Financial Services has recorded the Lien for Delinquent Assessments on 11/01/2011 and the Notice of Default and Election to Sell Pursuant to the Lien For Delinquent Assessments on 01/03/2012.  According to Nevada Revised Statutes, the Notice of Default and Election to Sell must be recorded on the property for 90 days and notification must be sent to all parties listed on the Trustee Sale Guarantee via certified mail before the Association can exercise its rights to enforce the Notice of Default and Election to Sell.

Currently, Red Rock Financial Services is approximately 60 days into the mandatory 90-day waiting period.  Please consider this your final notice before the Association exercises its right to continue with the non-judicial foreclosure process by recording the Notice of Sale.  The Notice of Sale will be sent via first class and certified mail to those listed on the Trustee Sale Guarantee and other parties who have a vested interest in the property.

The Association's Lien for Delinquent Assessments is Junior only to the Senior Lender/Mortgage Holder.  This Lien may affect your position.  To reinstate the above account, you must contact Red Rock Financial Services to obtain "up to date" payoff figures.  Payment must be made payable to Red Rock Financial Services.

At this time, it is possible that we have been unable to reach the borrower.  Your office may have been provided a more current mailing address.  Please contact the borrower at any known addresses and have them contact our office immediately, as the above property is in default and may be subject to a foreclosure sale.

Thank you for your assistance in this matter.  Additional information regarding this account can be obtained at www.rrfs.com.  Please contact the office of Red Rock Financial Services at 702-932-6887 with any questions.

Regards,
Red Rock Financial Services

Exhibit
Exhibit No.: 5
Name: mer ling
Date: 5/8/14
ESQUIRE

**Red Rock Financial Services**     ▪ 7251 Amigo Street, Suite 100  Las Vegas, NV 89119

www.rrfs.com                         ▪ Phone: 702-932-6887 Toll Free: 888-319-9460 Fax: 702.341.7733

By sending your check, please be aware that you are authorizing Red Rock Financial Services to use the information on your check to make a one-time electronic debit from your account at the financial institution indicated on your check.  This electronic debit will be for the amount of your check; no additional amount will be added to the amount.  (If we cannot collect your electronic payment, we will issue a draft against your account.)  Please contact the Accounts Receivable department at (702) 932-6887 to learn about other payment options should you prefer to not have your payment processed in this manner.

Assessor Parcel Number:  163-09-311-013
File Number:      R 94460
Property Address:   8246 Azure Shores Ct
                 Las Vegas, NV 89117

Inst #: 201304080002070
Fees: $18.00
N/C Fee: $0.00
04/08/2013 01:19:36 PM
Receipt #: 1566007
Requestor:
NORTH AMERICAN TITLE SUNSET
Recorded By: GILKS  Pgs: 2
DEBBIE CONWAY
CLARK COUNTY RECORDER

**Accommodation**

## NOTICE OF FORECLOSURE SALE
UNDER THE LIEN FOR DELINQUENT ASSESSMENTS

*Red Rock Financial Services is a debt collector and is attempting to collect a debt.  Any information obtained will be used for that purpose.*

## WARNING! A SALE OF YOUR PROPERTY IS IMMINENT! UNLESS YOU PAY THE AMOUNT SPECIFIED IN THIS NOTICE BEFORE THE SALE DATE, YOU COULD LOSE YOUR HOME, EVEN IF THE AMOUNT IS IN DISPUTE. YOU MUST ACT BEFORE THE SALE DATE.  IF YOU HAVE ANY QUESTIONS, PLEASE CALL RED ROCK FINANCIAL SERVICES AT (702) 932-6887 or (702) 215-8130.  IF YOU NEED ASSISTANCE, PLEASE CALL THE FORECLOSURE SECTION OF THE OMBUDSMAN'S OFFICE, NEVADA REAL ESTATE DIVISION AT (877) 829-9907 IMMEDIATELY.

Red Rock Financial Services officially assigned as agent by the Monaco Landscape Maintenance Association, Inc under the Lien for Delinquent Assessments. **YOU ARE IN DEFAULT UNDER THE LIEN FOR DELINQUENT ASSESSMENTS,** recorded on 11/01/2011 in Book Number 20111101 as Instrument Number 0000848 reflecting ARLENE G. DIZON as the owner(s) of record on said lien.  **UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT PUBLIC SALE.**  If you need an explanation of the nature of the proceedings against you, you should contact an attorney.

The Notice of Default and Election to Sell Pursuant to the Lien for Delinquent Assessments was recorded on 01/03/2012 in Book Number 20120103 as Instrument Number 0000848 of the Official Records in the Office of the Recorder.

**NOTICE IS HEREBY GIVEN:**  That on *05/02/2013*, at *10:00 a.m.* at the front entrance of the Nevada Legal News located at 930 South Fourth Street, Las Vegas, Nevada 89101, that the property commonly known as 8246 Azure Shores Ct, Las Vegas, NV 89117, and land legally described as MONACO #14 PLAT BOOK 90 PAGE 11 LOT 1177 BLOCK N of the Official Records in the Office of the County Recorder of Clark County, Nevada, will sell at public auction to the highest bidder, for

Exhibit
Exhibit No.: 6
Name: Marling
Date: 5/8/14
ⒺESQUIRE

ID-RRFS000029

Assessor Parcel Number:  163-09-311-013
File Number:        R 94460
Property Address:    8246 Azure Shores Ct
                     Las Vegas, NV 89117

cash payable at the time of sale in lawful money of the United States, by cash, a cashier's check drawn by a state or national bank, a cashier's check drawn by a state or federal credit union, state or federal savings and loan association or savings association authorized to do business in the State of Nevada, in the amount of **$2,940.71** as of 04/05/2013, which includes the total amount of the unpaid balance and reasonably estimated costs, expenses and advances at the time of the initial publication of this notice.  Any subsequent Association assessments, late fees interest, expenses or advancements, if any, of the Association or its Agent, under the terms of the Lien for Delinquent Assessments shall continue to accrue until the date of the sale. The property heretofore described is being sold "as is".

The sale will be made without covenant or warranty, expressed or implied regarding, but not limited to, title or possession, encumbrances, obligations to satisfy any secured or unsecured liens or against all right, title and interest of the owner, without equity or right of redemption to satisfy the indebtedness secured by said Lien, with interest thereon, as provided in the Declaration of Covenants, Conditions and Restrictions, recorded on 11/13/1998, in Book Number 981113, as Instrument Number 02435 of the Official Records in the Office of the Recorder and any subsequent amendments or updates that may have been recorded.

Dated: April 5, 2013

_____
Prepared By Christie Marling, Red Rock Financial Services, on behalf of Monaco Landscape Maintenance Association, Inc

STATE OF NEVADA          )
COUNTY OF CLARK          )

On April 5, 2013, before me, personally appeared Christie Marling, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that they executed the same in their authorized capacity, and that by their signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

_____

**Reinstatement Information:**  (702) 215-8130 or **Sale Information:**  (714) 573-1965

When Recorded Mail To:
Red Rock Financial Services
4775 W. Teco Avenue, Suite 140
Las Vegas, Nevada 89118
(702) 215-8130 or (702) 932-6887



MERYL R. FISHER
Notary Public State of Nevada
No. 12-7488-1
My appt. exp. Apr. 20, 2016

ID-RRFS000030



**PRIORITY POSTING AND PUBLISHING**
*17501 Irvine Blvd., Suite 1*
*Tustin, CA 92780*
*(714)573-7777 FAX (714)573-9547*

TS Number:     R94460
Priority Number: 1032097

## CERTIFICATE OF SALE



On 05/02/2013 at 10:00AM, the undersigned appeared at the location
described in the Notice of Trustee Sale and conducted a Trustee's Sale as agent for
Red Rock Financial Services

At said sale, the property described in the Notice of Trustee Sale was sold to:  IYAD HADDAD
and vested as: *LN MANAGEMENT LLC SERIES 8246 AZURE SHORES*  for the sum of
$15,000.00.

I certify (or declare) under penalty of perjury that the foregoing is true and correct.

By: _____
       (Deborah Fontenot)

Dated this 2nd day of May, 2013

CUSTOMER      Red Rock Financial Services
ADDRESS       4775 W. Teco Ave.
              Suite 140
              Las Vegas, NV 89118

Exhibit 7a
Exhibit No.: 7
Name: Merling
Date: 5 8 11 4
ⒺESQUIRE

ID-RRFS000019

Inst #: 201305130000850
Fees: $18.00 N/C Fee: $0.00
RPTT: $1076.10 Ex #
05/13/2013 09:07:35 AM
Receipt #: 1611970
Requestor:
**RESOURCES GROUP**
Recorded By: MAT   Pgs: 3
**DEBBIE CONWAY**
**CLARK COUNTY RECORDER**

Mail Tax statement to:
LN Management LLC Series 8246 Azure Shores
900 S Las Vegas Blvd, Suite 810
Las Vegas, NV 89101

APN # 163-09-311-013.

*MONA  8246
Azure Shores*

**FORECLOSURE DEED**

The undersigned declares: $1076.10

Red Rock Financial Services, herein called agent for (Monaco Landscape Maintenance Association, Inc), was the duly appointed agent under that certain Lien for Delinquent Assessments, recorded 11/01/2011 as instrument number 0000848 Book 20111101, in Clark County. The previous owner as reflected on said lien is **ARLENE G. DIZON**. Red Rock Financial Services as agent for Monaco Landscape Maintenance Association, Inc does hereby grant and convey, but without warranty expressed or implied to: **LN MANAGEMENT LLC SERIES 8246 AZURE SHORES** (herein called grantee), pursuant to NRS 116.31162, 116.31163 and 116.31164, all its right, title and interest in and to that certain property legally described as: MONACO #14 PLAT BOOK 90 PAGE 11 LOT 1177 BLOCK N which is commonly known as **8246 Azure Shores Ct Las Vegas, NV 89117.**

**AGENT STATES THAT:**
This conveyance is made pursuant to the powers conferred upon agent by Nevada Revised Statutes, the Monaco Landscape Maintenance Association, Inc governing documents (CC&R's) and that certain Lien for Delinquent Assessments, described herein. Default occurred as set forth in a Notice of Default and Election to Sell, recorded on 01/03/2012 as instrument number 0000533 Book 20130408 which was recorded in the office of the recorder of said county. Red Rock Financial Services has complied with all requirements of law including, but not limited to, the elapsing of 90 days, mailing of copies of Lien for Delinquent Assessments and Notice of Default and the posting and publication of the Notice of Sale. Said property was sold by said agent, on behalf of Monaco Landscape Maintenance Association, Inc at public auction on **05/02/13**, at the place indicated on the Notice of Sale. Grantee being the highest bidder at such sale became the purchaser of said property and paid therefore to said agent the amount bid **$15,000.00** in lawful money of the United States, or by satisfaction, pro tanto, of the obligations then secured by the Lien for Delinquent Assessment.

Dated: May 6, 2013

By: Kimberlee Sibley, employee of Red Rock Financial Services, agent for Monaco Landscape Maintenance Association, Inc

Exhibit
Exhibit No.: 8
Name: Marling
Date: 5|8|14
ⒸESQUIRE

ID-MLMA000410

STATE OF NEVADA )
COUNTY OF CLARK )

On May 6, 2013, before me, personally appeared Kimberlee Sibley, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that they executed the same in their authorized capacity, and that by their signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

ANNA ROMERO
Notary Public State of Nevada
No. 12-7487-1
My appt. exp. Apr. 20 2016

When Recorded Mail To:   LN Management LLC Series 8246 Azure Shores
900 S Las Vegas Blvd, Suite 810
Las Vegas, NV 89101

ID-MLMA000411

**STATE OF NEVADA**
**DECLARATION OF VALUE**

1. Assessor Parcel Number(s)
   a. 163-09-311-013
   b. _____
   c. _____
   d. _____

2. Type of Property:
   | | | | | |
   |---|---|---|---|---|
   | a. ☐ Vacant Land | b. ☑ Single Fam. Res. | | | |
   | c. ☐ Condo/Twnhse | d. ☐ 2-4 Plex | | | |
   | e. ☐ Apt. Bldg | f. ☐ Comm'l/Ind'l | | | |
   | g. ☐ Agricultural | h. ☐ Mobile Home | | | |
   | ☐ Other | | | | |

   | FOR RECORDERS OPTIONAL USE ONLY |
   |---|
   | Book_____ Page:_____ |
   | Date of Recording: _____ |
   | Notes: |

3.a. Total Value/Sales Price of Property    $ 210,863.00
   b. Deed in Lieu of Foreclosure Only (value of property( _____ )
   c. Transfer Tax Value:    $ 210,900.00
   d. Real Property Transfer Tax Due    $ 1076.10

4. **If Exemption Claimed:**
   a. Transfer Tax Exemption per NRS 375.090, Section_____
   b. Explain Reason for Exemption: _____

5. Partial Interest: Percentage being transferred: 100 %
   The undersigned declares and acknowledges, under penalty of perjury, pursuant to NRS 375.060
   and NRS 375.110, that the information provided is correct to the best of their information and belief,
   and can be supported by documentation if called upon to substantiate the information provided herein.
   Furthermore, the parties agree that disallowance of any claimed exemption, or other determination of
   additional tax due, may result in a penalty of 10% of the tax due plus interest at 1% per month. Pursuant
   to NRS 375.030, the Buyer and Seller shall be jointly and severally liable for any additional amount owed.

   Signature _Kimberlee Sibley_    Capacity: _EMPLOYEE OF AGENT OF FORECLOSING BENEFICIARY_

   Signature _____    Capacity: _____

   | **SELLER (GRANTOR) INFORMATION** | **BUYER (GRANTEE) INFORMATION** |
   |---|---|
   | Print Name: _MONACO LANDSCAPE MAINTENANCE ASSOCIATION INC._ | Print Name: _LN MANAGEMENT, LLC SERIES 8246 AZURE SHORES_ |
   | Address: 630 Trade Center Drive | Address: 900 S Las Vegas Blvd, Suite 810 |
   | City: Las Vegas | City: LasVegas |
   | State: NV          Zip: 89119 | State: NV          Zip: 89101 |

   **COMPANY/PERSON REQUESTING RECORDING (Required if not seller or buyer)**
   Print Name: _LN MANAGEMENT LLC SERIES_    Escrow # _____
   Address: _900 S LAS VEGAS BLVD #810   8246 AZURE SHORES_
   City: _L.V_    State: _NV_    Zip: _89101_

   AS A PUBLIC RECORD THIS FORM MAY BE RECORDED/MICROFILMED

ID-MLMA000412