UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ZYZZX2, | Case No. 2:13-CV-1307 JCM (PAL) |
| Plaintiff(s), | ORDER |
| v. | |
| ARLENE G. DIZON, et al., | |
| Defendant(s). | |

Presently before the court is a renewed motion for summary judgment filed by defendant Wells Fargo Bank, N.A. (hereinafter "Wells Fargo"). (Doc. #67). Plaintiff Zyzzx 2 (hereinafter "plaintiff") filed a response, (doc. #68), and Wells Fargo filed a reply. (Doc. #69).

**I.    Background**

This case involves a dispute over property that was subject to an HOA "superpriority" lien. On May 29, 2001, Arlene Dizon ("Dizon") borrowed $150,000.00 from World Savings Bank, FSB ("World Savings"), secured by a note and deed of trust on her property located at 8246 Azure Shores Court, Las Vegas, Nevada 89117. The deed of trust lists World Savings as the lender or beneficiary and Golden West Savings Association ("Golden West") as the trustee. (Doc. #52, Exh. 1).

Wells Fargo is the current holder of the note and beneficiary of the deed of trust on the property. (Doc. #52). On July 11, 2012, National Default Servicing Corporation ("NDSC") recorded a substitution of trustee whereby NDSC formally substituted for Golden West as trustee for the deed of trust.

On January 3, 2012, Red Rock Financial Services ("RRFS"), on behalf of the Monaco Landscape Maintenance Association, Inc. (the "association"), recorded a notice of default and

**James C. Mahan**
**U.S. District Judge**

1 election to sell pursuant to the lien for delinquent homeowners assessments on the property. According to this notice of default, Dizon owed the association $1,595.80 as of December 27, 2011. (Doc. #52, Exh. 2).On April 8, 2013, NDSC also recorded a notice of default and election to sell under the deed of trust, based on $33,012.86 in arrears, and the unpaid principal amount due under the note was $153,062.62 as of March 19, 2013.

The same day, RRFS recorded a notice of foreclosure sale on behalf of the association, setting an auction date of May 2, 2013.  This notice of sale indicated that Dizon owed the association $2,940.71 as of April 5, 2013.  (Doc. #52). Pursuant to RRFS's certificate of sale, a non-judicial foreclosure sale was conducted on May 2, 2013, at which the property was sold to Iyad Haddad for $15,000.00 with title to vest in LN Management LLC Series 8246 Azure Shores ("LNM"). The declaration of value attached to the foreclosure deed valued the property at $210,863.00.  (Doc. #52).

However, LNM then filed a complaint in Nevada state court for quiet title and declaratory relief. (Doc. #1-2). Thereafter, Wells Fargo removed the case to this court. (Doc. #1). On October 17, 2013, one day before Wells Fargo's scheduled foreclosure, LNM filed an emergency motion asking the court to enjoin Wells Fargo's foreclosure.  (Doc. #14).

The court denied the motion on the grounds that LNM failed to show a likelihood of success on the merits.  (Doc. #15).  The court reasoned that "such an interpretation of Nev. Rev. Stat. 116.3116 would lead to the absurd result that a relatively small HOA lien recorded years after a deed of trust could extinguish the prior security interest that is, in this case, nearly one hundred times greater."  (Doc. #15).

On October 18, 2013, the day of Wells Fargo's scheduled foreclosure, LNM's agent formed a new corporation, Zyzzx 2 ("Zyzzx").  LNM quitclaimed the property to Zyzzx.  Zyzzx then filed for bankruptcy, triggering an automatic stay preventing the foreclosure.  (Doc. #52). The parties stipulated to substitute Zyzzx as the plaintiff/counterdefendant in this case, in place of LNM.  (Doc. #28).

Wells Fargo filed a motion for summary judgment on the grounds that that the association's foreclosure sale was commercially unreasonable and NRS 116.3116 is unconstitutional.  (Doc.

**James C. Mahan**
**U.S. District Judge**

- 2 -

#52). This court entered an order (doc. #63) denying the motion without prejudice in accordance with Fed. R. Civ. P. 5.1 and directed Wells Fargo to give notice to the Attorney General of the State of Nevada of its constitutional challenge to NRS 116.3116. Wells Fargo did so and then filed the instant renewed motion for summary judgment, which asks the court to incorporate and rule on its prior motion for summary judgment. (Doc. #67).

II.     **Legal Standard**

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323-24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not

**James C. Mahan**
**U.S. District Judge**

- 3 -

consider the non-moving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

### III. Discussion

In addition to making a number of arguments regarding the statute's constitutionality, Wells Fargo contends, "the Association's non-judicial foreclosure sale in this case is void as commercially unreasonable." (Doc. #52).

The court must address this issue before considering any constitutional claims. *See Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981) ("[P]rior to reaching any constitutional questions, federal courts must consider nonconstitutional grounds for decision."); *United States v. Index Newspapers LLC*, 766 F.3d 1072, (9th Cir. 2014) ("[F]ederal courts generally do not reach constitutional questions if cases can be resolved on other grounds.").

As a threshold matter, NRS 116.3116 codifies the Uniform Common Interest Ownership Act ("UCIOA") in Nevada. *See* NRS 116.001 ("This chapter may be cited as the Uniform Common-Interest Ownership Act"); *SFR Investments Pool 1, LLC v. U.S. Bank, N.A.*, 334 P.3d 408, 410 (Nev. 2014). NRS chapter 116 includes an obligation of good faith. *See* NRS 116.1113 ("Every contract or duty governed by this chapter imposes an obligation of good faith in its performance or enforcement."). Furthermore, numerous courts have interpreted the UCIOA and NRS 116.3116 as imposing a commercial reasonableness standard on foreclosure of association liens.[1]

---

[1] *See Bayview Loan Serv. v. Alessi & Koenig, LLC et al.*, 962 F. Supp. 2d 1222, 1229 (D. Nev. 2013) ("[T]he sale for $10,000 of a Property that was worth $176,000 in 2004, and which was probably worth somewhat more than half as much when sold at the foreclosure sale, raises serious doubts as to commercial reasonableness"); *SFR*, 334 P.3d at 418 n.6 (noting bank's argument that purchase at association foreclosure sale was not commercially

In the present case, Wells Fargo argues that the association's sale was commercially unreasonable for two reasons. First, Wells Fargo contends that based on the relevant case law, the difference between the purchase price and the value of the property makes the sale commercially unreasonable. Second, Wells Fargo notes that the association inaccurately represented its lien as subordinate to the first deed of trust, dissuading potential purchasers from bidding on the property, therefore resulting in an unreasonably low price. (Doc. #52).

Plaintiff responds that Wells Fargo fails to claim any improprieties in the sale, and that a mere low price does not establish commercial unreasonableness. (Doc. #57).

The recent Nevada Supreme Court decision, *Shadow Wood Homeowners Association, Inc. v. New York Community Bancorp, Inc*, provides guidance when applying the commercial reasonableness standard. 132 Nev. Adv. Op. 5 (2016). *Shadow Wood* relies on *Long v. Towne's* two-part test, which states that "demonstrating that an association sold a property at its foreclosure sale for an inadequate price is not enough to set aside that sale; there must also be a showing of fraud, unfairness, or oppression." *Shadow Wood*, 132 Nev. Adv. Op. at *6 (citing *Long v. Towne,* 639 P.2d 528, 530 (1982)). In this case, there is no showing of fraud or oppression. The parties disagree as to whether Wells Fargo has adequately demonstrated an element of "unfairness" to support setting aside the sale.

*i. Inadequate price*

In order to determine what constitutes an inadequate price, the court cites favorably to the Restatement of Property Mortgages Section §8.3 which states that "[g]ross inadequacy cannot be precisely defined in terms of specific percentage of fair market value [, g]enerally . . . a court is warranted in invalidating a sale where the price is less than 20 percent of fair market value ., and,

---

reasonable); *Bourne Valley Court Trust v. Wells Fargo Bank, N.A.*, No. 2:13-cv-00649-PMP-NJK, 2015 WL 301063 at *5 (D. Nev. Jan. 23, 2015) (assessing commercial reasonableness of HOA foreclosure sale); *Thunder Props., Inc. v. Wood et al.*, 3:14-cv-00068-RCJ-WGC, 2014 WL 6608836 at *2 (D. Nev. Nov. 19, 2014) (concluding that purchase price of "less than 2% of the amounts of the deed of trust" established commercial unreasonableness "almost conclusively"); *Rainbow Bend Homeowners Assoc. v. Wilder*, 3:13-cv-00007-RCJ-VPC, 2014 WL 132439 at *2 (D. Nev. Jan. 10, 2014) (deciding case on other grounds but noting that "the purchase of a residential property free and clear of all encumbrances for the price of delinquent HOA dues would raise grave doubts as to the commercial reasonableness of the sale under Nevada law"); *Will v. Mill Condominium Owners' Assoc.*, 848 A.2d 336, 340 (Vt. 2004) (discussing commercial reasonableness standard and concluding that "the UCIOA does provide for this additional layer of protection").

James C. Mahan
U.S. District Judge

- 5 -

absent other foreclosure defects, is usually not warranted in invalidating a sale that yields in excess of that amount. " *Id.*

The foreclosure deed states that the property at issue was valued at $210,863.00 at the time of the foreclosure sale. (Doc. # 52, Exh. 2). While the unpaid principal amount due under the note and deed of trust was $153,062.62, the association sold the property for $15,000.00 after having represented the lien as subordinate to any first deed of trust. (Doc. #52, Exhs. 2, 6). Plaintiff paid $15,000.00 for a home valued at $210,863.00 at the time of foreclosure, approximately seven percent of the value of the property. Plaintiff neither challenges nor provides any evidence to dispute the value of the home at the time of sale.

Wells Fargo has, therefore, sufficiently demonstrated that the price of the property was "grossly inadequate" as defined by the Restatement of Property Mortgages Section §8.3. Accordingly, as the Nevada Supreme Court has previously held, "[a] wide discrepancy between the sale price and the value of the collateral compels close scrutiny into the commercial reasonableness of the sale. *Levers v. Rio King Land and Investment Company*, 560 P.2d 917, 920 (Nev. 1977); *Shadow Wood*, 132 Nev. Adv. Op. at *6.

It is unclear whether Nevada's favorable citation to the restatement indicates that it has adopted the restatement's view that *gross* inadequacy *is* proof of unfairness, and, consequently, the only element necessary to void a foreclosure sale. If Nevada adopted the restatement, the analysis would end here. Seven percent is well below the restatement's twenty percent threshold to demonstrate gross inadequacy.[2] However, *Shadow Wood* does not provide such clarity. Absent a clear statement from the Nevada Supreme Court that it has adopted the restatement's rule, this court will continue to analyze commercial reasonableness under *Long*'s two-part test. *Long v. Towne,* 639 P.2d 528, 530 (1982).

. . .

. . .

---

[2] Arizona, for example, has adopted the Restatement of Property Mortgages Section §8.3 and held that sale of real property under power of sale in a deed of trust may be set aside solely on the basis that the bid price was grossly inadequate. *See In re Krohn*, 203 Ariz. 205, 52 P.3d 774 (2002).

**James C. Mahan**
**U.S. District Judge**

- 6 -

     *ii.*  *"Unfairness"*

  Consequently, the court turns to whether the circumstances surrounding the sale demonstrate "unfairness" under the *Long* test that would invalidate the sale. Nevada has not clearly defined what constitutes "unfairness" in determining commercial reasonableness. The few Nevada cases that have discussed commercial reasonableness state, "every aspect of the disposition, including the method, manner, time, place, and terms, must be commercially reasonable." *Levers v. Rio King Land & Inv. Co.*, 93 Nev. 95, 98, 560 P.2d 917, 920 (1977). This includes "quality of the publicity, the price obtained at the auction, [and] the number of bidders in attendance". *Dennison v. Allen Grp. Leasing Corp.*, 110 Nev. 181, 186, 871 P.2d 288, 291 (1994) (citing *Savage Constr. v. Challenge–Cook*, 102 Nev. 34, 37, 714 P.2d 573, 574 (1986)).

  When a sale price is demonstrably inadequate, courts in equity may invalidate a sale upon a showing of any slight defect in the sale. The United States Supreme Court in *Ballentyne v. Smith* held that "if there be great inadequacy, slight circumstances of unfairness in the conduct of the party benefited by the sale will be sufficient to justify setting it aside. It is difficult to formulate any rule more definite than this, and each case must stand upon its own peculiar facts." 205 U.S. 285, 290 (1907) (citing *Graffam v. Burgess*, 117 U. S. 180, 191-92 (1886)). Several other jurisdictions have recently utilized this balancing test. *See, e.g., Meng v. CitiMortgage, Inc.*, No. 4:12-CV-514 CAS, 2013 WL 1319008, at *5 (E.D. Mo. Mar. 29, 2013); *In re Krohn*, 203 Ariz. 205, 213, 52 P.3d 774, 782 (2002) ("where the price thus bid . . . is greatly disproportionate to its actual value, *very slight* evidence of unfairness or irregularity will suffice to authorize the relief sought." (quoting *Baldwin v. Brown*, 193 Cal. 345, 224 P. 462, 465 (1924)).

  In this case, the homeowner's association represented to both the general public as well as Wells Fargo that the association's foreclosure would not extinguish the first deed of trust. (Doc. #52, Exhs. 2, 4). The association sent a letter to Wells Fargo and other interested parties stating that its foreclosure would not affect the senior lender/mortgage holder's lien. (Doc. #52, Exh. 2). Wells Fargo, consequently, had no notice from the association that its interest was at risk and that it should pay off the HOA loan.

**James C. Mahan**
**U.S. District Judge**

- 7 -

1    Furthermore, the association's Declaration of Covenants, Conditions, Restrictions, Reservations and Easements for Monaco (the "Monaco Declaration") were publically available and expressly incorporated into the foreclosure deed. (Doc. #52, Exh. 4). The Monaco Declaration contains a mortgage protection clause, which provides, in relevant part, that the association's lien is subordinate to any first security interest recorded prior to the association's notice of default. (*Id.*).

Plaintiff claims that because the law in question establishing the senior rights of a super-priority lien has "been on the books since 1991," it is now entitled to the property free and clear of Wells Fargo's interest, contrary to the manner in which the property was advertised prior to the sale.

However, it is precisely because NRS 116.3116 has been "on the books since 1991" that the association's statements concerning the title it would convey render the sale "unfair." Plaintiff cannot have it both ways; if the HOA has always had a superpriority lien pursuant to NRS 116.3116, then it affirmatively misrepresented the title to Wells Fargo and the public.

The association's notice to Wells Fargo and the information it conveyed to potential buyers was legally inaccurate and resulted in an unreasonably low sale price. Wells Fargo had no opportunity to cure Dizon's delinquency. Higher bidders were dissuaded from offering a commercially reasonable price based on the assertions that they would take title subject to the mortgage loan. This defect in sale, coupled with a disproportionately low price, demonstrates that the foreclosure was unfair and commercially unreasonable. Plaintiff therefore fails to establish its claim to quiet title under the two part test laid out in *Shadow Wood* and *Long*. *Shadow Wood*, 132 Nev. Adv. Op. at *6; *Long v. Towne,* 639 P.2d at 530.

Defendant asserts a number of additional theories in support of its motion for summary judgment.  (Docs. #52, 67). In light of the above analysis, the court need not address these alternative arguments.  The court will grant Wells Fargo's motion.

In light of the court's finding that the HOA foreclosure sale at issue was void, plaintiff, as a matter of law, cannot assert any claims against defendant Arlene Dizon based on an interest in the property.  While this defendant has not answered plaintiff's complaint, plaintiff has not moved

**James C. Mahan**
**U.S. District Judge**

- 8 -

for default against her. Based on the foregoing, the court will dismiss plaintiff's claims against defendants and direct the clerk to close the case.

### IV. Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Wells Fargo's motion for summary judgment, (doc. #67), be, and the same hereby is, GRANTED.

The clerk shall enter judgment in favor of defendants and close the case.

DATED March 25, 2016.

_____
UNITED STATES DISTRICT JUDGE